**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ARLETHA "JENE" CAREY and RICHARD CAREY, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA; DOE PHYSICIANS 1-40; DOE NURSES 41-120; AND DOES 121-300, inclusive,<br><br>Defendants. | 2:10-cv-01532-GMN-RJJ<br><br>**ORDER**<br><br>Plaintiff's Motion to Strike Defendant's Expert Designation for Failure to Timely Disclose (#23) |

This matter comes before the Court on Plaintiffs' Motion to Strike Defendant's Expert Designation for Failure to Timely Disclose (#23)*.* The Court also considered Defendants' Response (#28) and Plaintiff's Reply (#31).

**BACKGROUND**

This is a medical malpractice case. Plaintiffs Arletha "Jene" Carey and Richard Carey have filed this suit against the United States. Plaintiffs allege that the United States, and medical providers under its control, were negligent in the provision of medical care to Plaintiff Arletha "Jene" Carey, which resulted in injuries to her health as well as pain and suffering. Plaintiffs also allege medical negligence - *respondeat superior* and loss of consortium. As further damages, Plaintiffs allege continuing medical expenses and financial losses.

The Careys filed their Complaint (#1) on September 9, 2010. On January 19, 2011, the Court entered the first joint Discovery Plan and Scheduling Order (#9). On April 12, 2011, the

parties stipulated to extend the time for discovery. That stipulation was denied and a separate Scheduling Order (#16) was issued by the Court on May 16, 2011, which required discovery to be completed by August 31, 2011, with initial expert witness disclosures due by June 17, 2011 and rebuttal experts by July 17, 2011.

On June 17, 2011, Plaintiffs disclosed their expert witnesses and written reports pursuant to Fed. R. Civ. P. 26(a)(2). Plaintiffs identified two expert witnesses: Dr. Michael Harris, a medical expert expected to testify regarding medical issues, liability, causation, and damages; and Linda Ciruzzi, a registered nurse and certified life care planner expected to testify concerning Ms. Carey's current and future medical needs.

The United States did not disclose any expert witnesses on or before June 17, 2011.

On July 18, 2011, the United States disclosed five (5) rebuttal expert reports.[1] The United States named the following rebuttal expert witnesses: Alexander David Allins, MD, FACS (critical care surgeon), David Lewis Geffner, MD, FACP, FACE (endocrinologist), Jerome C. Stenehjem, MD (physiatrist), Susan Riddick-Grisham, RN, BA, CCM, CLCP (life care planner) and Thomas F. Cargill, Ph.D. (economist).

On August 15, 2011, Plaintiffs filed their Motion to Strike Defendant's Expert Designations (#23), which seeks to exclude all of the United States' rebuttal expert witnesses except Thomas F. Cargill, Ph.D. (economist). Plaintiffs argue that the United States has mischaracterized its expert witnesses as "rebuttal" witnesses and should have disclosed these witnesses before the deadline for initial expert witness disclosures on June 17, 2011. Maintaining that these purported rebuttal experts were improperly designated, Plaintiffs have declined to depose them.

**DISCUSSION**

Plaintiffs assert that Defendants' expert witnesses are not actually rebuttal witnesses, and

---

[1] The United States' rebuttal experts were timely disclosed on July 18, 2011, because the due date for such disclosures, July 17, 2011, fell on a Sunday.

2

1  should have been disclosed before the deadline for initial expert reports on June 17, 2011.
2  Plaintiffs argue that "it is impossible for [Defendant's experts] to be rebuttal experts as the
3  United States did not disclose any initial expert witnesses to be rebutted, instead choosing to
4  violate this Court's Order and disregarding the disclosure requirements of Fed. R. Civ. P. 26."
5  Motion to Strike (#23) at 6 lines 3-6 (#23).  This argument completely misses the mark.  A
6  party's rebuttal witnesses are not meant to rebut the testimony of its own initial experts, but
7  rather those of the opposing party. Thus, it makes no difference that the United States did not
8  disclose any initial expert witnesses, only that the Plaintiff did.

9  Rebuttal witnesses are "intended solely to contradict or rebut evidence on the same
10 subject matter identified by another party." FED. R. CIV. P. 26(a)(2)(D). Thus, the United States'
11 rebuttal expert witnesses may not opine regarding matters on which it bears the burden of proof.

12 In order to determine whether or not the United States' expert witnesses are actual
13 rebuttal witnesses, the Court must look at the expert reports of each party to ensure that the
14 United States' expert reports[2] are "intended solely to contradict or rebut evidence on the same
15 subject matter identified [and addressed] by [Plaintiffs'] initial expert witness[es]." *Lindner v.*
16 *Meadow Gold Dairies, Inc.*, 249 F.R .D. 625, 635-36 (D. Hawaii 2008).

17 **I.     Rebuttal Expert Reports – Allins and Riddick-Grisham**

18 The expert reports of Dr. Allins and Ms. Riddick-Grisham are easily discernible as
19 rebuttal expert reports and are structured as such.

20 Dr. Allins was called on to review and analyze the expert report of Plaintiffs' expert,
21 Michael D. Harris, MD. Dr. Allins continually refers to Dr. Harris' report throughout his report
22 and his final conclusion directly rebuts that of Plaintiff's expert. Dr. Harris' expert report
23 concludes: "It is my expert opinion that Defendant United States of America through Mike
24 O'Callaghan's Federal Hospital's various breaches in the standards of care caused Plaintiff
25 Arletha 'Jene' Carey's injuries and/or damages including, but not limited to adrenal

---

[2] Plaintiffs do not object to Dr. Cargill as a rebuttal expert.

insufficiency and the sequelae that will continue and require treatment throughout her life." Document (#48), Harris Expert Report at 2. Dr. Allins' report, on the other hand, states that "Ms. Arletha Carey's adrenal insufficiency was not caused by any action or inaction on the part of clinical staff of Mike O'Callaghan's Federal Hospital, Las Vegas, Nevada during Ms. Carey's admission of May 2006." Document (#49), Allins Expert Report at 4.

Likewise, Riddick-Grisham was asked to specifically review a "life care plan" submitted by Plaintiff's expert, Linda Ciruzzi. A life care plan provides "an organized, concise plan for current and future needs with associated cost for individuals who have experienced catastrophic injury or have chronic health care needs." Document (#49), Riddick-Grisham Expert Report at 8. Aside from general background information, essentially all of Riddick-Grisham's report is dedicated to a long list of areas where Ciruzzi has "deviated from the accept [*sic*] methodology" in creating the life care plan. Document (#49), Riddick-Grisham Expert Report at 9. For example, Ms. Riddick-Grisham states that Ms. Cizzuri failed to consider Ms. Carey's preexisting conditions when formulating the life care plan rather than focusing on the "diagnosis of adrenal insufficiency resultant from hemorrhage." Document (#49), Riddick-Grisham Expert Report at 8. Ms. Riddick-Grisham also noted that predicting life expectancy is outside of Ms. Ciruzzi's expertise and that such an analysis should be performed by a physician. *Id*.

## II.     Rebuttal Expert Reports – Geffner and Stenehjem

The expert reports of both David Lewis Geffner, MD, and Jerome C. Stenehjem, MD, rebut Plaintiffs' initial expert reports in a less direct way than those of Dr. Allins and Riddick-Grisham. Although both Dr. Geffner and Dr. Stenehjem directly contradict certain conclusions of Plaintiffs' expert reports, neither one of them directly references what portions of Plaintiffs' expert reports they are rebutting. However, it is clear that both Dr. Geffner and Dr. Stenehjem have relied on Plaintiffs' initial expert reports in crafting their own reports and these reports deal with the same "subject matter," as required by Rule 26(a)(2)(D).

While only mentioning Dr. Harris in passing, Dr. Geffner, like Dr. Allins previously,

directly rebuts Dr. Harris' ultimate conclusion. Dr. Geffner concludes that Mike O'Callaghan's Federal Hospital did not cause Ms. Carey's adrenal insufficiency. "I conclude to a reasonable degree of medical probability that this patient does not suffer from permanent Addison's disease. Her adrenal insufficiency was due to the high dose of glucocorticoid dexamethasone which she took prior to her hospitalization, and which resolved within two months of her discharge." Document (#49), Geffner Expert Report at 13.

Dr. Stenehjem states that he reviewed the reports of both Dr. Harris and Ciruzzi in preparing his own expert report and his conclusions directly contradict those of Plaintiffs' experts. For example, in calculating future medical costs, Ciruzzi assigns Ms. Carey a life expectancy of 20.5 years. As noted by Riddick-Grisham, Ciruzzi is not qualified to predict life expectancy. In his report, Dr. Stenehjem estimates Ms. Carey's life expectancy to be "not greater than 8 years," directly rebutting Ciruzzi's opinion. Document (#49), Stenehjem Expert Report at 9.

The United States maintains that the experts disclosed on July 18, 2011, are rebuttal experts. The Court finds that the rebuttal expert opinions support this claim. Plaintiffs' Motion to Strike Defendant's Expert Designation for Failure to Timely Disclose (#23) will be **DENIED**.

## **CONCLUSION**

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Plaintiffs' Motion to Strike Defendant's Expert Designation for Failure to Timely Disclose (#23) is **DENIED**.

DATED this 12th day of April, 2012.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge

5